IN THE
UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

MONTRELL HOLMES,
    Plaintiff,

v.

WEXFORD HEALTH SOURCES, INC.,
DR. KURT OSMUNDSON,
NURSE PRACTITIONER KASEY KRAMER,
    Defendants.

Case No. 23-cv-4003
Judge: Colin Stirling Bruce

## AMENDED COMPLAINT
### CIVIL RIGHTS ACT, TITLE 42, SECTION 1983

I. **FEDERAL JURISDICTION:**

This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 & 1343(A). Venue is proper in this District under 28 U.S.C. § 1391(b), because the events giving rise to the claims asserted in this Complaint occurred in this judicial district.

II. **PARTIES:**

Plaintiff, Montrell Holmes, Reg. No. B04248, Henry Hill Correctional Center, P.O. Box 1700, Galesburg, IL. 61402.

**Defendants:**

The foregoing named Defendants in this action can be located at:

Henry Hill Correctional Center
Health Care Unit
600 Linwood Road
Galesburg, IL. 61402

III. **PREVIOUS LAWSUITS:**

Montrell Holmes v. Dr. Obadina, Case No.:
Montrell Holmes v. Dr. Kurt Osmundson, Case No.:

IV. **EXHAUSTION OF ADMINISTRATIVE REMEDIES:**

Plaintiff brings this action in accordance to IDOC Grievance Procedures, and has exhausted his grievance through the Administrative review Board for IDOC. (See Emergency Grievance No. 22-5-177 E / Hill Corr. Center).

(Continued)

**V.   STATEMENT OF CLAIM:**

<u>CASE SYNOPSIS</u>

1) On or about September 24, 2021, this Plaintiff was transferred to the Henry Hill Correctional Center in Galesburg, Illinois.

2) Upon being screened by the Health Care Unit's medical personnel, Plaintiff reported about an injury that he had sustained at his previous institution, and that he was in need of medical attention to address the severe pain he was experiencing.

3) Plaintiff was given the direction to submit a Sickcall Request and he would be seen to have his medical issue addressed.

4) The Plaintiff thereafter began utilizing the Sickcall Request system and was thereafter seen on several occasions seeking medical treatment that would alleviate the ongoing pain in his left shoulder.

5) Plaintiff was illegally subjected to a defacto medical protocol when he was forced to submit a total of three Sickcall Requests **before** the screening Jane Doe LPN would schedule him to be examined by a Nurse Practitioner for his very severe shoulder pain.

6) Upon being seen by Nurse Practioner Kasey Kramer, she began a regimen of pain medications (i.e. NSAIDS) for the Plaintiff's injured shoulder; said shoulder had very limited movement and was extremely painful, and it was evident that a serious injury had occurred to the shoulder.

7) After several months of not finding an NSAID/pain medication to remedy the Plaintiff's severe pain and limited movement, N.P. Kramer had this Plaintiff examined by Medical Director, Dr. Osmondson (Def. Osmondson).

8) Accordingly, Def. Osmundson too continued [Along with N.P. Kramer] with the same course of ineffective NSAID medical treatment, even though he was fully aware that said medications were not helping with the severe pain, nor did they do anything for the Plaintiff's inability to use his left arm due to the injury to his shoulder.

9) Plaintiff continued to complain via Sickcall and reported that said medications were not helping his injured left shoulder, and during this time Def. Osmundson/[N.P. Kramer] methodically ignored Plaintiff's severe shoulder injury, and refused/disregarded his requests/need for a low bunk permit.

10) Finally, after several months, Def. Osmundson scheduled Plaintiff to be seen and examined by an orthopedic physician, who immediately scheduled a CT Scan/MRI, and it revealed that Plaintiff had a **complete, severe, tendon tear** in his left shoulder **rotater cuff,** and that surgery was required to negate his pain and restore normal movement - or movement without pain.

11) So after the June 2, 2022, orthopedic exam, the Ortho Physician provided this Plaintiff with a shoulder injection to try to help with his severe and obvious pain until surgery to repair his torn rotater cuff could be approved by Wexford and scheduled.

(Continued)

12) Upon returning to Hill C.C. from his othopedic exam Plaintiff was briefly seen by Def. Osmundson in regards to his orthopedic exam furlough at which time said Defendant discussed the ortho physicians findings with this Plaintiff.

13). During said discussion, Plaintiff again asked for a low bunk permit due to the established fact that he had a severe injury to his shoulder, and that he could not climb into his top bunk assignment without assistance from his cellmate or he would sleep on the floor. (Plaintiff herein notes that the top bunks at the Hill C.C. are over 5' feet high - off the floor - and that there is absolutely no safe way to climb into said top bunk safely or if injured; Plaintiff is a 51 year old, 210 lb. individual with a serious shoulder injury). At this time Def. Osmundson again denied Plaintiff a low bunk permit, and advised him to just "be careful" when he was getting into or out of said bunk.

14) Plaintiff also requested a medication that would address his pain and a waist chain permit that would allow him to be secured without causing him to have to raise and bend his arms/shoulders together in the event he was placed on lockdown and had to be moved in restraints (i.e. handcuffs) or he had to go back out on a medical furlough again. Said Defendant too, denied this Plaintiff these requests.

15) Plaintiff then requested to know what the treatment would be going forward to have is injured shoulder fixed, at which point he was advised that he would need to be seen by the Physical Therapist for treatment and that surgery would have to be approved by Wexford if that form of medical treatment became an option. (Plaintiff notes that this discussion took place on **June 2, 2022**, and that this particular shoulder injury was initially reported to Hill C.C. medical personnel on or about **September 24, 2021**. As of the date of the filing of this Complaint, this Plaintiff still has not been seen by the Physical Therapist, nor has he received any further medical treatment to stop or reduce the severe pain that he constantly suffers with.

16) Plaintiff further stipulates that his shoulder injury has - and continues to - cause him severe stress, loss of sleep, severe aggravation due to the daily pain that he is forced to endure when he's getting dressed, trying to shower or wash-up in his cell, and even when he uses the toilet.

17) This Plaintiff further notes that since being transferred to this facility, that he has complained to, and been examined by multiple nurses, nurse prationer, a physician (all Wexford employees) and a orthopedic physician subcontracted by Wexford Inc., all in an attempt to obtain adequate medical treatment for a now factually confirmed severely injured shoulder that knowingly causes him extreme pain and discomfort, but to no avail.

18) The Plaintiff now moves with the assistance of a **Prisoner at Law** (PAL) to bring this Civil Rights Complaint as a means to receive the appropriate medical treatments for his serious shoulder injury.

(Continued)

## COUNT I

### Deliberate Indifference caused by Defacto Medical Treatment Policys and Protocols that create urgent medical treatment delays.

19) Plaintiff herein alleges that Def. Wexford Health Sources Inc. has written medical protocols that are errantly used to intentionally **delay** effective medical treatments for painful injuries such as this Plaintiff has in this case.

20) One such policy/protocol is explained to Sickcall nursing staff in such a manner so that a Sickcall screening nurse "thinks" that a prisoner who is seen on a Sickcall Call Line for an injury such as this Plaintiff reported, has to submit at least **3 Sickcall requests** (i.e. **three separate** and **distinct** occassions) within a 30 day period, **before** the Sickcall screening nurse can submit the inmate to be seen/examined by a nurse practioner or physician. In other words, regardless of whatever pain the Plaintiff/prisoner is reporting, if he's not bleeding or having a heart attack, he must be seen three times within a month before the nurse can schedule him for medical treatment by the N.P. or doctor. This is a defacto reading/representation of how the written policy is intended to be used, and it caused this Plaintiff to suffer with - and have treatment delayed - for his serious shoulder injury.

21) Plaintiff too alleges that Def. Wexford's medical policies and practice for shoulder injuries, only allow for very conservative medical treatment using lengthy regimens of precribed NSAIDS as an ineffective attempt to curb severe pain that only surgery can eventually cure.

22) Said policy(s) do not take into consideration an individuals obvious injury, and when the shoulder area esentially causes, and renders, the Plaintiff's left arm useless due to tHe severe pain he experienced each time his arm was moved in the rotator cuff area.

23) Plaintiff again notes that on June 2, 2022, after having reported said obvious left shoulder injury in September of 2021, and after having jumped through every conservative delay of treatment practice that each Wexford employed LPN, RN, N.P., and Def. Osmundson **required** him to painfully undertake, Plaintiff's severe left shoulder injury was confirmed with an MRI; however, this Plaintiff, to date, still has not been provided the timely and adequate medical treatment to provide him pain relief for said injury.

24) Accordingly, Plaintiff states that Def. Wexford's medical policys, practices, and protocols, caused - and continue to - delay medical treatment (i.e. surgical intervention) that is required to allow this Plaintiff to regain use of his left arm and to stop his severe pain and suffering.

## COUNT II

### Deliberate Indifference by Def. Osmundson /Delay of Medical Treatment/ Knowingly persisting in a ineffective course of treatment for Plaintiff's left shoulder injury.

25) Plaintiff herein incorporates the foregoing paragraph's #1 through 24, into this Count II cause, and stipulates - and alleges - that Def. Osmundson knowingly acted with deliberate indifference when he used - and followed - the

(Continued)

Def. Wexford's defacto, very conservative, course of medical treatment(s) for this Plaintiff's obvious and severely injured left shoulder for over a period of many months.

26) Plaintiff was - and continues to be - subjected to an ineffective course of medical treatment(s) that left him to suffer in pain daily, as Def. Osmundson acted with - and continues to act with - deliberate indifference, in that he's denying Plaintiff pain relief surgery, a low bunk permit, or even a waist chain permit, and has not conducted any follow-up treatment with this Plaintiff, which simply leaves this Plaintiff suffering psychologically.

## COUNT III

### DELIBERATE INDIFFERENCE BY DEFENDANT NURSE PRACTIONER K. KRAMER FOR DELAY OF MEDICAL TREATMENT / KNOWINGLY PERSISTING IN AN INEFFECTIVE COURSE OF TREATMENT FOR PLAINTIFF'S LEFT SHOULDER INJURY

27) Plaintiff herein incorporates the foregoing paragraphs 1-26, and stipulates and alleges, that Nurder Practioner Kasey Kramer knowingly acted with deliberate indifference when she used - and followed - the Defendant Wexford's defacto, very conservative, course of medical treatment(s) for this Plaintiff's obvious and severely injured shoulder for over a period of 1 year plus and on going.

28) Plaintiff was - and continues to be - subjected to an ineffective course of medical treatment(s) that left to suffer in pain daily, as Nurse Practioner Kramer acted with - and continues to act with deliberate indifference by not conducting any follow up treatment with this Plaintiff, and has not renewed any of the Plaintiff's pain medication, which simply leaves this Plaintiff suffering psychologically.

VI. **RELIEF SOUGHT:**

The Plaintiff, Montrell Holmes, pro se, and with the assistance of a Prisoner at Law, brings this Civil Rights Amended Complaint against the named Defendants in their Official and Individual capacities, and asks that the Court will:

A) Award **Nominal** damages - to be determined by a jury - to vindicate the Plaintiff's constitutional rights that the Defendant's knowingly violated.

B) Award **Punitive** damages - to be determined by a jury - to deter unnecessary and wanton infliction of pain and suffering caused by the Official and Individual acts that were without penological justification, and were caused by the foregoing named defendants.

C) Award **Compensatory** damages - to be determined by a jury - for the intentional pain, stress, and psychological injuries inflicted upon Plaintiff.

D) Award **Consequential** damages - to be determined by a jury - for the after care and ongoing pain and suffering that the Plaintiff will endure due to his injury not being properly treated in a timely manner.

(Continued)

E)  Award **Presumed** damages - to be determined by a jury - for the harm and suffering that was endured by the Plaintiff, which is impossible to measure because of the injury and damage done are unmeasurable.

F)  Award any other damages and injunctive relief that this Honorable Court may deem appropriate and just that this Plaintiff may be entitled to.

VII. JURY DEMAND:

The Plaintiff does demand that this case be tried by a jury.

Respectfully submitted,

*Montrell Holmes*

Montrell Holmes
Reg. No. B04248
Henry Hill c.c.
P.O. Box 1700
Galesburg, IL. 61402

PLAINTIFF - PRO SE

## CERTIFICATION

Pursuant to 28 U.S.C. § 1746, I declare under the penalties of perjury and by signing this Amended Complaint, that I certify that all information cited herein is true and correct to the best of my knowledge and belief. I understand that if this certification is not correct, that I may be subjected to sanctions by this Court, including dismissal of this action.

Signed on this 21 day of November, 2023.

*Montrell Holmes*
Montrell Holmes